Peter J. Pizzi
Selina M. Ellis
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, Fifteenth Floor
Newark, New Jersey 07102
Tel: (973) 757-1100

*Of Counsel:*

Charles J. Harder (to be admitted *pro hac vice*)
HARDER LLP
100 Park Avenue, Sixteenth Floor
New York, New York 10017
Tel: (212) 799-1400

*Counsel for Plaintiff Binance Holdings Limited*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BINANCE HOLDINGS LIMITED,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>FORBES MEDIA LLC,<br>MICHAEL DEL CASTILLO and<br>JASON BRETT,<br><br>　　　　　　Defendants. | Civil Action No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>*Filed Electronically* |

Plaintiff Binance Holdings Limited ("Binance"), by and through its undersigned attorneys, hereby complains against defendants Forbes Media LLC, Michael del Castillo and Jason Brett (collectively, "Defendants") as follows:

## SUMMARY OF ACTION

1. Binance is a cryptocurrency exchange.

2. On October 29, 2020, Defendants published a story on the Forbes Media, LLC ("Forbes") website bearing the headline: "Leaked 'Tai Chi' Document Reveals Binance's Elaborate Scheme To Evade Bitcoin Regulators," at www.forbes.com/sites/michaeldelcastillo/2020/10/29/leaked-tai-chi-document-reveals-binances-elaborate-scheme-to-evade-bitcoin-regulators (the "Story").

3. The Story contains numerous false, misleading and defamatory statements about Binance. Among other things, the Story falsely states that Binance created an "elaborate scheme to evade Bitcoin regulators," "conceived of an elaborate corporate structure designed to intentionally deceive regulators," had an "ulterior motive" in setting up a U.S. entity, sought to "execute a bait and switch," sought to "surreptitiously profit from crypto investors in the United States," "funneled back" revenue from its U.S. entity to the parent company, used its U.S. entity as "a decoy," sought to "undermine the ability of anti-money laundering and U.S. sanctions enforcement to detect illicit activity," is "reminiscent of Amway-style multi-level marketing organizations," "has been side-stepping American regulators," exhibits a "key 'red flag' characteristic of money laundering" and that "there is speculation that the FBI and the IRS may be investigating" Binance.

4. All of these statements by the Defendants, as well as the full list of statements from the Story provided further below, are false and defamatory. Among other things, neither Binance, nor anyone on its behalf, created the purported 2018 slideshow presentation referenced in the Story. Binance also has not implemented any of the suggestions in that proposal, which

was created by a third party.  The Story falsely states that "senior Binance executives" both created and implemented it.

5.     Importantly, Binance does not violate, and fully complies with, all applicable laws, rules and regulations in its operations.  Binance does not seek to evade or "side-step" any regulatory entities in any jurisdictions in connection with their role in ensuring that all laws, rules and regulations of their jurisdictions are complied with.

6.     Binance also does not move or "funnel back" revenue from a U.S. entity to Binance, nor does Binance engage in any activity that could even remotely be described as "money laundering."

7.     Defendants' false public statements, misrepresentations and innuendo that Binance does not comply with applicable law, seeks to evade regulators, and is engaged in activity "characteristic of money laundering" are highly damaging to Binance.

8.     Prior to filing this action, Binance sent Defendants a letter demanding that Defendants remove, retract and apologize for the numerous false statements in the Story, identified herein.  Defendants refused to do so, thereby necessitating this lawsuit.  Binance has filed this action to protect its hard-earned reputation and business, which has been severely damaged by Defendants' false and defamatory statements and wrongful conduct.

## THE PARTIES

9.     Plaintiff Binance Holdings Limited is a limited company organized under the laws of the Cayman Islands.

10.    On information and belief, defendant Forbes is a New Jersey limited liability company, with its principal place of business in Jersey City, New Jersey.

11. On information and belief, defendant Michael del Castillo is an individual residing in or around New York City, New York, and is a staff writer for Forbes.

12. On information and belief, defendant Jason Brett is an individual residing in or around Washington, D.C., and is a contributing writer for Forbes.

13. On information and belief, Defendants, and each of them, were and are the agents, licensees, employees, partners, joint-venturers, co-conspirators, owners, principals and/or employers of each other and each of them are, and at all times mentioned herein were, acting within the course and scope of that agency, license, partnership, employment, conspiracy, ownership or joint venture.  Upon further information and belief, the acts and conduct herein alleged of each of the Defendants were known to, authorized by and/or ratified by the other Defendants and each of them.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds the statutory minimum.

15. Venue is proper under 28 U.S.C. § 1391(b)(1) & (b)(2), in that the primary defendant, Forbes, is a domiciliary of the state of New Jersey and resides in this judicial district. The other defendants (Forbes' writers who wrote the Story) do business in this judicial district in connection with their services for and on behalf of Forbes, including in connection with writing the Story at issue. Thus, a substantial part of the events or omissions giving rise to this action also occurred in this judicial district.

**STATEMENT OF RELEVANT FACTS**

16. Forbes published the Story, written by defendant del Castillo "[w]ith additional reporting from [defendant Brett]" on October 29, 2020. It contains the following false, misleading and defamatory statements about Binance:

   a. Binance is pursuing an "Elaborate Scheme To Evade Bitcoin Regulators."

   b. Binance "conceived of an elaborate corporate structure designed to intentionally deceive regulators."

   c. Binance sought to "surreptitiously profit from crypto investors in the United States."

   d. The document on which the Story is based was "created by" "senior Binance executives."

   e. "While Binance appears to have gone out of its way to submit to U.S. regulations by establishing a compliant subsidiary, Binance.US, an ulterior motive is now apparent."

   f. Binance had a "strategic plan to execute a bait and switch."

   g. "While the then-unnamed entity set up operations in the United States to distract regulators with feigned interest in compliance, measures would be put in place to move revenue in the form of licensing fees and more to the parent company, Binance."

   h. "All the while, potential customers would be taught how to evade geographic restrictions while technological work-arounds were put in place."

   i. "[Binance] Chief compliance officer [Samuel] Lim had previously sent an email to Forbes confirming that [Harry] Zhou had been a Binance employee"

j. "[M]any of the specifics outlined within" the scheme "are already in place."

k. The plan discussed in the Story was created by a "former Binance employee."

l. "[Binance sought] to undermine the ability of anti-money laundering and U.S. sanctions enforcement to detect illicit activity."

m. Strong implication that "engagement of CipherTrace was part of a larger investigation into Binance or Binance.US" by the Securities and Exchange Commission.

n. Under Binance's plan, "revenue from the U.S. business could be funneled back to Binance, the parent company. . . . But unlike an actual subsidiary whose parent company could be held accountable for regulatory violations, the Tai Chi entity would have little more than a contractual relationship . . . . Essentially, it would be a decoy."

o. "Binance.US is expected to engage the Securities and Exchange Commission, the Commodities Futures Trading Commission and the New York Department of Financial Services, but importantly . . . it doesn't expect to gain approvals from any of them."

p. "Binance.US [is] the Tai Chi entity" referenced in the document on which the Story is based.

q. "[Binance is] reminiscent of Amway-style multi-level marketing organizations."

r. "Binance has been side-stepping American regulators."

s. Binance exhibits a "key 'red flag' characteristic of money laundering."

        t.    "[T]here is speculation that the FBI and the IRS may be investigating" Binance.

17.    The foregoing statements are false, misleading and highly defamatory to Binance. Neither Binance, nor anyone on its behalf, created the purported 2018 slideshow presentation referenced in the Story. The person who Forbes claims created it, Harry Zhou, is not and never was an employee of Binance. Binance has not implemented any of the suggestions in the proposal, which was created by a third party. The Story falsely states that Binance both created and implemented the plan.

18.    Binance does not violate, and fully complies with, all applicable laws, rules and regulations in its operations. Binance also does not seek to evade or "side-step" any regulators in any jurisdictions.

19.    Binance also does not "funnel back" or otherwise move revenue from any U.S. entity to Binance, nor does Binance engage in any activity that could even remotely be described as a "money laundering."

20.    Defendants' false public statements, misrepresentations and innuendo that Binance does not comply with applicable law, seeks to evade regulators, and is engaged in activity "characteristic of money laundering," among other false statements referenced above, are highly damaging to Binance.

21.    Defendants were aware, when they published the Story, that the purported 2018 slideshow presentation was nothing more than a proposal by a third party, and that it was not a "strategic plan" created by Binance. Defendants also were aware that the person who purportedly created it, Harry Zhou, was not a Binance employee, nor acted on its behalf. Defendants also grossly mischaracterized the 2018 slideshow proposal in the Story as being an

effort to evade regulators, "funnel back" money from a U.S. entity to Binance, and engage in activity "characteristic of money laundering." In doing so, Defendants were aware that all such statements were false and/or grossly misleading. No facts or evidence in Defendants' possession at the time of publishing the Story, or otherwise, suggested, let alone demonstrated, that:

(a) the U.S. entity discussed in the Story "funneled back" or moved any money to Binance;

(b) Binance engaged in any activity that truthfully could be described as "characteristic of money laundering"; or that

(c) Binance engaged in any activity that could truthfully be described as evading regulators, or violating any law, rule or regulation of any jurisdiction.

Nonetheless, Defendants proceeded to publish the false, misleading and defamatory statements in the Story, knowing that they would cause substantial harm to Binance. Defendants published these statements knowing that they were false, or made them with reckless disregard for the truth.

## FIRST CAUSE OF ACTION

### (Defamation)

22. Binance realleges and incorporates by this reference the allegations in Paragraphs 1 through 21 of this Complaint as though fully set forth herein.

23. The statements by Defendants set forth in Paragraph 16 herein were false.

24. The false statements were of and concerning Binance.

25. To the extent that actual malice is required to be pleaded and proven, Defendants made the false statements either knowing that the statements were false or with reckless disregard for the truth.

26. The false statements are not protected by any privilege or authorization.

27. Binance has been seriously damaged as a direct and proximate result of Defendants' publication of the false statements, the full amount of which will be proven at trial, believed to be in the millions of dollars. Further, the false statements constitute defamation *per se* because they impugn the basic integrity, creditworthiness and/or competence of Binance's business.

28. Defendants' conduct was willful, malicious, and oppressive, in that Defendants knew full well that the false statements would harm Binance. As such, in addition to compensatory damages and/or presumed damages, Binance demands punitive damages relating to Defendants' publication and maintenance of the above-referenced false statements, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Binance respectfully requests:

i. An award of compensatory damages in an amount to be determined at trial;

ii. An award of punitive damages in an amount to be determined at trial;

iii. An order granting permanent injunctive relief to prevent Defendants from making the same defamatory statements about Binance, and requiring Defendants to permanently remove the defamatory statements about Binance;

iv. An award of all costs of suit; and

v. An award of such other and further relief as the Court deems proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Binance hereby demands a trial by jury on all issues so triable in this action.

Dated:  November 18, 2020               WALSH PIZZI O'REILLY FALANGA LLP

By:     */s Peter J. Pizzi*
      Peter J. Pizzi
      Selina M. Ellis
Three Gateway Center
100 Mulberry Street, Fifteenth Floor
Newark, New Jersey 07102
Tel: (973) 757-1100

*Of Counsel:*
Charles J. Harder (to be admitted *pro hac vice*)
HARDER LLP
100 Park Avenue, Sixteenth Floor
New York, New York 10017
Tel: (212) 799-1400

*Counsel for Plaintiff Binance Holdings Limited*

## **RULE 11.2 CERTIFICATION**

I hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of any other pending or anticipated litigation in any court or arbitration proceeding, nor are there any non-parties known to Plaintiff that should be joined to this action. In addition, I recognize a continuing obligation during the course of this litigation to file and to serve on all other parties and with the Court an amended certification if there is a change in the facts stated in this original certification.

Dated:  November 18, 2020                                      WALSH PIZZI O'REILLY FALANGA LLP


By:_____/s Peter J. Pizzi_____
         Peter J. Pizzi
         Selina M. Ellis
Three Gateway Center
100 Mulberry Street, Fifteenth Floor
Newark, New Jersey 07102
Tel: (973) 757-11100

*Of Counsel:*
Charles J. Harder (to be admitted *pro hac vice*)
HARDER LLP
100 Park Avenue, Sixteenth Floor
New York, New York 10017
Tel: (212) 799-1400

*Counsel for Binance Holdings Limited*

## **RULE 201.1 CERTIFICATION**

I hereby certify that the above-captioned matter is not subject to compulsory arbitration in that the Plaintiff seeks, *inter alia*, damages in excess of $150,000, exclusive of interest and costs and any claim for punitive damages, and injunctive relief.

Dated:  November 18, 2020                                  WALSH PIZZI O'REILLY FALANGA LLP


By:      */s Peter J. Pizzi*
     Peter J. Pizzi
     Selina M. Ellis
Three Gateway Center
100 Mulberry Street, Fifteenth Floor
Newark, New Jersey 07102
Tel: (973) 757-11100

*Of Counsel:*
Charles J. Harder (to be admitted *pro hac vice*)
HARDER LLP
100 Park Avenue, Sixteenth Floor
New York, NY 10017
Tel: (212) 799-1400

*Counsel for Binance Holdings Limited*